IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| Robabe Yazdian, et al., | : | |
| --- | --- | --- |
| | : | |
| Plaintiffs, | : | Case No. 1:06cv316 |
| | : | |
| v. | : | Chief Judge Susan J. Dlott |
| | : | |
| Lufthansa German Airlines, | : | ORDER DENYING MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 46.) For the reasons that follows, the Court **DENIES** Defendant's motion.

## I. BACKGROUND

Robabe Yazdian ("Mrs. Yazdian")[1] and Ali Yazdian ("Mr. Yazdian") (collectively, "Plaintiffs") brought this lawsuit against Lufthansa German Airlines ("Lufthansa") for personal injuries sustained by Mrs. Yazdian when she fell while attempting to sit in a wheelchair at the Chicago O'Hare airport after debarking from a flight from Frankfort, Germany on April 29, 2004. The Yazdians were returning to the United States from Iran. The itinerary for their return trip required departing from Iran and flying to Frankfurt, Germany; laying over in Frankfurt for eight to ten hours; flying to Chicago, Illinois; and then flying to Cincinnati, Ohio. Mr. and Mrs. Yazdian had requested that Lufthansa have attendants with a wheelchair meet them as they debarked the Lufthansa aircraft at the Chicago airport so that Mrs. Yazdian would not have to walk to catch their connecting flight to Cincinnati.

---

[1] Mrs. Yazdian died on December 17, 2008 of natural causes.

1

Wheelchair services at the Chicago airport were provided by Prospect Airport Services, Inc. ("Prospect").[2] According to the Amended Complaint, Mrs. Yazdian "proceeded to sit in the wheelchair when it unexpectedly and suddenly moved backwards causing her to lose her balance and in an attempt to regain equilibrium she thrust forward, forcefully hitting her head and body against the wall of the platform." (Doc. 14 ¶ 11.) Immediately following the fall, Mrs. Yazdian was transported to the Resurrection Medical Center Hospital in Chicago for assessment and treatment. According to the Amended Complaint, Mrs. Yazdian suffered painful injuries, including permanent disability, as a result of the fall and Mr. Yazdian suffered loss of the services and consortium of Mrs. Yazdian.

Lufthansa moves for summary judgment on Plaintiffs' claims on grounds that the Yazdians cannot establish breach of duty or causation. Lufthansa has taken the depositions of Mr. Yazdian, Mrs. Yazdian, Prospect's manager Vladimir Raikov ("Mr. Raikov"), and the wheelchair pusher Bozhidara Svirkova ("Ms. Svirkova"). Lufthansa asserts that the testimony of these persons demonstrate that neither Mr. Yazdian or Mrs. Yazdian know how the incident occurred, and Mr. Raikov and Ms. Svirkova affirmatively testified that the wheelchair brakes were engaged, Ms. Svirkova had her hands on the wheelchair, and the wheelchair did not move prior to the fall.

---

[2] Plaintiffs filed an Amended Complaint on October 19, 2006 adding Prospect Airport Services, Inc. as a defendant. Prospect did not file an answer and has not otherwise entered an appearance. Plaintiffs did not file proof of service or a waiver of service signed by Prospect. Simultaneous with the entry of this Order, the Court is issuing an order for Plaintiffs to show cause why the Court should not dismiss the action against Prospect.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." *Id.* at 252.

## III. ANALYSIS

Lufthansa asserts that the uncontested facts absolve it from any liability for the injuries suffered by Mrs. Yazdian. The Yazdians did not observe the position of the parking brakes on the wheelchair as Mrs. Yazdian was approaching it, and they did not observe the position of the

3

parking brakes after Mrs. Yazdian's fall. Prospect employees Ms. Svirkova and Mr. Raikov, on the other hand, observed that the wheelchair brakes were engaged at the time of Mrs. Yazdian's fall. Mrs. Yazdian did not see whether the wheelchair moved from underneath her. Mr. Raikov, who witnessed the event, testified that Mrs. Yazdian tried to reach the armrest of the wheelchair, lost her balance, fell down, and hit the wall of the jet bridge with the back of her head.

One day after the fall, on April 30, 2004, Mrs. Yazdian had an infectious disease evaluation at Resurrection Medical Center Hospital in Chicago ("Resurrection"). The report of the evaluation states in relevant part, "[Mrs. Yazdian] states that prior to leaving Iran she developed fevers for 3-4 days before she flew. She was also feeling very weak. She was complaining of diarrhea at the time. . . . She states that she did have nausea and vomiting, had some diarrhea, but currently that has improved." On May 2, 2004, while at Resurrection, Mrs. Yazdian was evaluated in relation to a diagnosis of anemia. The report of that evaluation states: "While making connections at O'Hare Airport, [Mrs. Yazdian] became weak, dizzy, and slipped out of her wheelchair. She was brought to the emergency at Resurrection Medical Center where she was noted to be anemic, febrile with diarrhea and in modest renal failure."

While Plaintiffs admit the above facts, they dispute others. Specifically, Plaintiffs deny that Mr. Yazdian was unable to see whether the wheelchair moved prior to his wife's fall, deny that the wheelchair did not move, and deny that the wheelchair cannot move when the brakes are engaged. Plaintiffs assert that whether the wheelchair moved backwards when Mrs. Yazdian attempted to sit down and whether Mr. Yazdian witnessed Mrs. Yazdian's fall are disputed issues of material fact.

The Court must not weigh the evidence but must determine from the evidence presented whether there is a genuine issue for trial. In so doing, the Court must read all evidence and the inferences drawn therefrom in favor of the Yazdians. Applying this standard, the Court concludes that the evidence is not so one-sided that Lufthansa must prevail as a matter of law.

Although Mrs. Yazdian did not see the chair move backwards, she testified at her deposition that she *felt* it move backwards. (Robabe Yazdian Dep. at 167-68.)[3] Mr. Yazdian's deposition testimony on the subject is inconsistent. Mr. Yazdian's deposition testimony on direct examination is as follows:

> Q    Is that your testimony that you saw the chair move?
> A    I didn't see it, but I saw the chair went back.
> Q    So you saw the chair go back?
> A    Yeah.
> Q.    Okay.
> A    I don't know how many inches.
> Q    But did you see the chair go back?
> A    Yeah.
> \*    \*    \*
> Q    So you're absolutely certain that her legs were hitting the chair?
> A    Yeah.
> Q    And that the chair moved back. You just don't know how far it moved back?
> A    No, I don't.
> Q    And then earlier, just to recap, you did say that the wheelchair pusher did not have their arms on the chair?
> A    No. That one I know for sure because I saw that.

---

[3]
> Q    Did you ever feel the chair go backwards?
> A    I never saw it.
> Q    I know you never saw it. Did you feel the chair go backwards?
> A    Yeah. Yeah.
> Q    Okay. And you felt that in the back of your legs?
> A    Yes.

(Robabe Yazdian Dep. at 167-68.)

> Q All right. And you're absolutely certain the chair moved
> back, you just don't know how far?
> A Right.

(Ali Yazdian Dep. at 101-103.) Then, on cross-examination, Mr. Yazdian testified as follows:

> Q And I just heard you when asked by Mr. Bartlett whether
> you saw the chair move you answered, I didn't see, but the
> chair moved. I'm not sure what that meant. Did you see
> the chair move or did you not see the chair move?
> A I didn't see the chair move, but I saw when she was –
> before she sit down she was close to here (indicating).
> Then I saw the chair moved back and then I heard that
> noise. But I didn't see physically – I be honest with you –
> if the chair moved.

(*Id.* at 103.) Mr. Yazdian later supplemented this testimony with a sworn affidavit in which he stated that "there was a person behind the wheelchair but she did not have hold of the wheelchair and that the wheelchair moved backward several inches while Robabe Yazdian attempted to sit down." (Ali Yazdian Aff. ¶ 5.)[4]

Mrs. Yazdian testified that she felt the wheelchair move back when she tried to sit in it, and Mr. Yazdian testified that he saw the wheelchair "moved back," which can be construed as evidence that the wheelchair moved back as Mrs. Yazdian was attempting to sit down. Because the evidence presented by the Yazdians in regard to whether the wheelchair moved as Mrs. Yazdian attempted to sit down conflicts with the testimony provided by Prospect, there is a disputed issue of fact as to whether the wheelchair moved as Mrs. Yazdian attempted to sit

---

[4] A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his or her earlier deposition testimony. *Peck v. Bridgeport Mach., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001). Mr. Yazdian's affidavit does not contradict his deposition testimony but is consistent with his deposition testimony on direct examination.

down.  This disputed fact is material to the issue of what caused Mrs. Yazdian to fall and sustain injury.[5]

Lufthansa directs the Court to Plaintiffs' admission that "[a]s Mrs. Yazdian was walking towards the chair, Raikov testified that she tried to reach the armrest of the wheelchair, lost her balance, fell down, and hit the wall of the jet bridge with the back of her head."  (Proposed Undisputed Facts ¶ 33.)  Similarly, Lufthansa notes that Plaintiffs admit that Ms. Svirkova recorded her observations on the date of the incident and that her statement reads that "[a] lady walked off the airplane with her husband helping her to the wheelchair by holding her arm.  When they approached the wheelchair, her husband let go of her arm and as she reached for the arm rest she lost her balance and fell."  (*Id*. ¶ 41.)  That Plaintiffs admit these proposed facts does not establish causation as to Mrs. Yazdian's fall.  Rather, the Plaintiffs admit that Mr. Raikov *testified* as to causation and that Ms. Svirkova *recorded* her observations in a written statement.  Plaintiffs did not purport to admit to the veracity of these observations and statements.  Thus, Plaintiffs admissions in this regard do not admit the cause of Mrs. Yazdian's fall.

---

[5] Plaintiffs also submitted as evidence for the Court's consideration an email dated May 5, 2004.  Plaintiffs refers to this email as "an incident report . . . generated in confidence at the request of Lufthansa immediately after Mrs. Yazdian's fall."  (Mem. Opp. at 50.)  The email indicates that Mr. Yazdian was not helping Mrs. Yazdian walk as she approached the wheelchair.  (Mem. Opp. Ex. F.)  Plaintiffs submitted this email to contradict evidence provided by Mr. Raikov and Ms. Svirkova that Mrs. Yazdian fell when Mr. Yazdian let go of her arm.  (*See* Raikov Dep. Ex. 12.)

Only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.  *Wiley v. United States*, 20 F. 3d 222, 226 (6th Cir. 2000).  The Court cannot consider the May 5 email as evidence because the document was not an exhibit to any deposition or affidavit, and Plaintiffs do not authenticate the document in any way.

Lufthansa correctly notes that to establish negligence, it is incumbent upon a plaintiff to identify or explain the reason for the fall. *Stamper v. Middletown Hosp. Ass'n*, 65 Ohio App. 3d 65, 67-68, 582 N.E.2d 1040 (Ohio App. 1989). Further, speculation or conjecture on a plaintiff's part about what caused her fall is not sufficient as a matter of law. *Genova v. Hillbrook Club, Inc.*, No. 2003-G-2496, 2004 WL 1486987 (Ohio App. June 30, 2004). Plaintiffs in this case allege that the reason for Mrs. Yazdian's fall was that the wheelchair moved backwards. They support this allegation with Mrs. Yazdian's testimony that she felt the chair move back when she tried to sit down. This testimony constitutes more than "speculation" or "conjecture" about what caused Mrs. Yazdian's fall. Reading the evidence in a light most favorable to Plaintiffs, there is a genuine issue as to whether, in fact, wheelchair movement caused the fall, precluding summary judgment on Mrs. Yazdian's personal injury claim against Lufthansa.

Lufthansa notes that Plaintiffs' arguments focus on Prospect's actions, not Lufthansa's, and that even if Mrs. Yazdian felt the wheelchair move, she did not provide any testimony as to whether any of Prospect's (not to mention Lufthansa's) acts or omissions caused such a movement.

Plaintiffs' Amended Complaint alleges the following:

> The Plaintiffs were lead [sic] to believe by the airline that the flight services were all provided by Lufthansa German Airlines. . . . [Plaintiffs] requested Lufthansa to have attendants with a wheelchair meet them as they debarked the Lufthansa aircraft at the Chicago airport. . . . The Defendant, Lufthansa, directly or through its agent or subcontractor, Prospect Airline Services, Inc., failed to carry out the highest degree of care required of common carriers and were negligent in that Lufthansa and Prospect failed to provide sufficient assistance, personnel, and/or equipment to assure that Mrs. Yazdian would be safely seated in the wheelchair and transported to the flight to Cincinnati. . . . At all material

8

> times herein, the Defendants had a non-delegatable [sic] duty and
> obligation to provide the highest degree of care to Mrs. Yazdian.

(Am. Compl. ¶¶ 5, 13, 16.) Plaintiffs claim that Lufthansa had a duty to provide a wheelchair and associated services to Mrs. Yazdian when she debarked the Lufthansa aircraft, that the wheelchair attendant did not adequately assist Mrs. Yazdian and/or secure the wheelchair, that the wheelchair moved as Mrs. Yazdian was attempting to sit down in it, and that Mrs. Yazdian fell because the wheelchair moved and she was not being adequately assisted. These allegations, if supported by the evidence at trial, are legally sufficient to constitute evidence of a breach of duty by Lufthansa. *Cf. Hildebrandt v. Kroger Co.*, No. 01-CA-114, 2002 WL 1270891 (Ohio App. May 17, 2002) (granting defendant's motion for summary judgment after finding that the customer's conclusion that the floor was slippery was not legally sufficient to constitute evidence of a breach of duty without some evidence that the store did something to make the floor slippery). That the wheelchair attendant was not a Lufthansa employee does not necessarily foreclose Lufthansa's liability. Plaintiffs allege that Prospect was Lufthansa's agent or subcontractor, and Lufthansa has presented no evidence to refute this allegation.

Finally, summary judgment is improper as to Mr. Yazdian's loss of consortium claim as well. Under Ohio law, "[c]onsortium consists of society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." *Clouston v. Remlinger Oldsmobile Cadillac, Inc.*, 22 Ohio St. 2d 65, syllabus, 258 N.E.2d 230 (Ohio 1970). Mrs. Yazdian testified that as a result of her fall, she was unable to perform services around the home like cooking, cleaning, and washing the family clothes. In addition, Mr. Yazdian testified that he

9

had no intimate relations with his wife since her fall.[6]  Having presented no clear evidence to the contrary, Lufthansa is not entitled to summary judgment on Mr. Yazdian's loss of consortium claim.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

    s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court

---

[6] When asked at her deposition when she last had "intercourse" with her husband, Mrs. Yazdian said, "[l]ast week." (Robabe Yazdian Dep. at 163.)  When asked, "has the ability of you to have intimate relationships with your husband changed significantly since 2004?", Mrs. Yazdian answered, "No.  No.  We are the same.  We are old people." (*Id*.)  Mr. Yazdian testified that he thought Mrs. Yazdian did not understand the question due to the Iranian culture.  (Ali Yazdian Dep. at 91.)  Furthermore, the Court notes that English was not Mrs. Yazdian's first language, and she stated in her deposition that her "language is very poor."  (Robabe Yazdian Dep. at 69.)